1  Andrew W. Shalaby [SBN 206841]
   7525 Leviston Ave
2  El Cerrito, CA 94530
   tel. 510-528-8500, fax 510-528-2412
3
   Attorney for Plaintiff Billie J. Smith
4

5

6

7
                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
9

10 | BILLIE J. SMITH,                          | Case No. C 07-03883 WHA
11 |                                           | PLAINTIFF'S REQUEST FOR JUDICIAL
   |                          Plaintiff,       | NOTICE OF CALIFORNIA SENATE
12 | vs.                                       | BILL 515 (2003) UNDERLYING CCP §
   |                                           | 425.17
13 | FIRESIDE THRIFT COMPANY, a.k.a.           |
   | FIRESIDE BANK, and DOES 1-50,             |
14 |                                           | Date: September 13, 2007
   |                                           | Time: 8:00 a.m.
15 |                          Defendants.      | Rm. 9, 19th Floor
   |                                           | Judge: William H. Alsup

16
17 TO THE COURT, ALL PARTIES AND THEIR COUNSELS OF RECORD:

18      Plaintiff Billie J. Smith (hereinafter "PLAINTIFF") respectfully requests that this

19 Court take judicial notice pursuant to 28 U.S.C. § 201(b), (c), and (d),  of the following

20 attached exhibit, certified on the accompanying Declaration of Andrew W. Shalaby set forth

21 below:

22      1.   Exhibit 1, a true and correct copy of the California Senate's bill
        analysis of Senate Bill 515 (2003), found on the internet at:
23      2.
        http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_0501-0550/sb_515_cfa_200305
24      07_133358_sen_comm.html

25                              **VERIFICATION**

26      I declare under penalty of perjury under the laws of the State of

27 California that exhibit 1 attached hereto is a true and correct copy of California

28
   _____
   **PTF request for Judicial Notice, SB 515 (2003)**        **Case No.** C 07-03883 WHA

1   Senate's bill analysis of Senate Bill 515 (2003), found on the internet at:
2   http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_0501-0550/sb_515_cfa_200305
3   07_133358_sen_comm.html
4   .
5
6   Executed September 1, 2007 in El Cerrito,           _____
7   CA                                                  Andrew W. Shalaby

**EXHIBIT 1**

```
                    SENATE JUDICIARY COMMITTEE
                      Martha M. Escutia, Chair
                       2003-2004 Regular Session


SB 515                                                          S
Senator Kuehl                                                   B
As Amended May 1, 2003
Hearing Date: May 6, 2003                                       5
Code of Civil Procedure                                         1
GWW                                                             5
```

                                SUBJECT

Anti-SLAPP (Strategic Lawsuit Against Public Participation) Law:

             Restrictions on Use of Special Motion to Strike

                              DESCRIPTION

_ This bill would make the SLAPP motion (special motion to strike
a cause of action arising from any act of the defendant in
furtherance of that person's right of petition or free speech)
inapplicable to: a) public interests and class action lawsuits
when specified conditions are met; and b) lawsuits brought
against a business that arises from commercial statements or
conduct of that business, as specified.

This bill would also provide if the trial court denies a SLAPP
motion because of the new exemptions, the stay of discovery and
the right to an immediate appeal provisions of the anti-SLAPP
law do not apply.

The bill would also make legislative findings relating to the
disturbing abuse of the anti-SLAPP law, and stating that
continued participation in matters of public significance should
not be chilled through abuse of the judicial process or the
anti-SLAPP law.

                              BACKGROUND

Strategic Lawsuits Against Public Participation, or SLAPP suits,


                                                               (more)



SB 515 (Kuehl)
Page 2

      as they have become popularly termed, were first defined by
      University of Denver Law School Professor George Pring and
      University of Denver Sociology Professor Penelope Canan in their
      seminal article, Strategic Lawsuits Against Public Participation
      (1988) 35 Social Problems 506, as "civil lawsuits ... that are
      aimed at preventing citizens from exercising their political
      rights or punishing those who have done so."

      While SLAPP suits "masquerade as ordinary lawsuits" such as
      defamation and interference with prospective economic advantage,
      they are generally meritless suits brought primarily to chill
      the exercise of free speech or petition rights by the threat of
      severe economic sanctions against the defendant, and not to
      vindicate a legally cognizable right.  (See, Pring and Canan,
      SLAPPS:  Getting Sued for Speaking Out  (Temple University
      Press, 1996).)

      In 1992, Code of Civil Procedure Section 425.16 was enacted by
      SB 1264 (Lockyer), Ch. 726, Stats. of 1992, to provide a
      "special motion to strike" for use by defendants in SLAPP
      lawsuits to obtain an early judicial ruling and termination of a
      meritless claim arising from a person's exercise of the
      constitutional rights of petition and free speech in connection
      with a public issue.  In passing the Anti-SLAPP law, the
      Legislature found that "there has been a disturbing increase in
      lawsuits brought primarily to chill the valid exercise of the
      constitutional rights of freedom of speech and petition for the
      redress of grievances . . . that it is in the public interest to
      encourage continued participation in matters of public
      significance, and that this participation should not be chilled
      through abuse of the judicial process."  (Emphasis added.)

      In 1997, this preamble of the anti-SLAPP law was amended to
      provide that the Section 425.16 shall be broadly construed.  (SB
      1296 (Lockyer), Ch. 271, Stats. of 1997.)

      Since becoming law in 1993, there have been at least 100
      reported appellate opinions construing Section 425.16, including
      13 federal appellate decisions and 6 California Supreme Court
      decisions, providing 33 pages of annotations to the West codes.

      _

      _____SB 515 (Kuehl)
      _____Page 3


                              CHANGES TO EXISTING LAW

    1.  _Existing law_  provides that a cause of action against a person

arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution, as specified, is subject to a special SLAPP motion to strike, unless the court determines there is a probability that the plaintiff will prevail on the claim.  This SLAPP motion is not applicable to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.  (Code of Civil Procedure Section 425.16.  All references are to this code unless stated otherwise.)

 This bill  would further provide that the following claims or actions are not subject to a special motion to strike:

   Any action brought solely in the public interest or on
  behalf of the general public when all three following
  conditions are met:
     a)  The plaintiff does not seek any relief greater than or
     different from the relief sought for the general public
     or a class of which the plaintiff is a member.  A claim
     for attorney's fees, costs, or penalties would not
     constitute greater or different relief.
    b) The action, if successful, would enforce an important
      right affecting the public interest, and would confer a
      significant benefit on the general public or a large
      class of persons.
    c)         Private enforcement is necessary and places a
      disproportionate financial burden on the plaintiff in
      relation to the plaintiff's stake in the matter.

   Any cause of action brought against a person primarily
  engaged in the business of selling or leasing goods or
  services, including, but not limited to, insurance,
  securities, or financial instruments, arising from any
  statement or conduct of that person when both the following
  conditions are met:
   a) the statement or conduct consists of representations of
    fact about that person's or a business competitor's
    business operations, goods, or services, that is made for

SB 515 (Kuehl)
Page 4


       the purpose of obtaining approval for, promoting, or
       securing sales or leases of, or commercial transactions
       in, the person's goods or services, or the statement or
       conduct was made in the course of delivering the good's
       or services; and,
      b) either i) is aimed at an actual or potential buyer, or
       person likely to repeat the statement to, or otherwise
       influence the buyer, or ii) arose out of or within the

    context of a regulatory approval process, proceeding or investigation, even if that statement or conduct concerns an important public issue.

2. _Existing law_ provides that an order denying a special motion to strike is appealable to the court of appeal. (Section 425.16(j).) _Existing law_ generally provides that the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby. (Section 916.) _Existing law_ also provides for a stay of discovery when a SLAPP motion is filed, but allows the court to allow specified discovery for good cause shown. (Section 425.16(g).)

   _This bill_ would make those stay and appeals provisions inapplicable when a trial court denies a special motion to strike on the grounds that a cause of action is exempt pursuant to this bill.

3. _The bill_ would make legislative findings and declarations decrying the disturbing abuse of the anti-SLAPP law, which has undermined the exercise of constitutional rights of freedom of speech and petition for redress of grievances, and stating that public participation in matters of public significance should not be chilled through abuse of the judicial process or the anti-SLAPP law.

          _COMMENT_

1. _Stated need to prevent Anti-SLAPP law from being abused as a litigation weapon_

   The Consumer Attorneys of California (CAOC), sponsors of SB 515, assert that SB 515 is needed to stop corporate abuse of the statute and to return Section 425.16 to its original

SB 515 (Kuehl)
Page 5

   purpose of protecting a citizen's rights of petition and free speech from the chilling effect of expensive retaliatory lawsuits brought against them for speaking out. They note that in recent years, a growing number of large corporations have invoked the anti-SLAPP statute to delay and discourage litigation against them by filing meritless SLAPP motions, using the statute as a litigation weapon.

   As evidence of their claim, CAOC points to the raising number of SLAPP motions filed in the superior courts of Sacramento, Los Angeles, and San Francisco where total SLAPP motions in those courts have jumped from 93 in the year 2000 to 200 in the year 2002. CAOC argues that seminars such as those

promoted by the Practicing Law Institute, "Challenging a 17200 Claim as a 'SLAPP' Suit," are encouraging corporations to use the SLAPP motions as new litigation weapon to slow down and perhaps even get out of litigation.

Asserts the Consumer Justice Center, a simple pro bono public interest case that should be completed in six months with $5,000 in expenses becomes a costly and financially risky ordeal when the anti-SLAPP law is misused. The filing of the meritless SLAPP motion by the defendant, even if denied by the court, is instantly appealable, which allows the defendant to continue its unlawful practice for up to two years, the time of appeal.

Proponents assert that the increased use by corporations of meritless SLAPP motions subverts the purpose of the anti-SLAPP law to protect citizens from expensive retaliatory lawsuits brought to chill their valid exercise of constitutional rights. In Wilcox v. Superior Court (1994) 27 Cal. App. 4th 809, 815-816, the court set forth a description of the quintessential SLAPP suit:

> The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress. [Citations.] Plaintiffs in these actions typically ask for damages which would be ruinous to the defendants. [Citations.] SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the

SB 515 (Kuehl)
Page 6

> plaintiff. [Citations.] . . . . [t]hey are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. [Citation.]

Proponents argue that this chilling effect does not apply when a large corporate defendant has massive resources that it may rely upon in litigation, unlike the private citizen. In support of SB 1651, last year's vetoed bill, University of Denver Professor, Dr. Canan, co-author of the seminal research on SLAPP suits, writes:

> Anti-Slapp legislation is intended ? to provide citizens who are sued for speaking out with a speedy and relatively inexpensive defense mechanism against attacks on their First Amendments rights by SLAPPs?.
>
> How ironic and sad, then, that corporations in California

>have now turned to using meritless anti-SLAPP motions as a
>litigation weapon.  This turns the original intent of one
>of the country's most comprehensive and effective
>anti-SLAPP laws on its head.
>
>Corporate defendants have far greater resources to defend
>themselves when sued, and as a group are far less likely -
>or not likely at all - to be chilled in the exercise of
>their First Amendment rights.  Wealthy corporate
>defendants, some with their own legal departments, simply
>do not suffer the chilling effect on their rights when
>faced with a lawsuit claiming, for example, false
>advertising or fraud or illegal business practices, that
>common citizens suffer when sued for speaking out.

2.  <u>Asserted SLAPP motion abuse stems from recent court cases
    broadly interpreting anti-SLAPP law in response to recent
    legislation</u>

>The increased use of the SLAPP motion appears to coincide with
>the California Supreme Court's decision in Briggs v. Eden
>Council for Hope and Opportunity (1999)
>19 Cal.4th 1106, in which the court followed the Legislature's
>direction and broadly construed the anti-SLAPP law to find
>that any statement made in any legislative, judicial or other

SB 515 (Kuehl)
Page 7

>official proceeding was protected under the anti-SLAPP law,
>even if the statement did not concern a public issue or issue
>of public interest.
>
>In 1997, this Legislature enacted SB 1296, which directed that
>the anti-SLAPP statute shall be construed broadly to
>effectuate its purposes.  That measure sought to overturn
>cases that were thought by its supporters to be unduly
>limiting the reach of the anti-SLAPP law.  One such
>specifically identified case was Zhao v. Wong (1996) 48
>Cal.App.4th 1114, which was abrogated by the Supreme Court in
>Briggs.  However, as Justice Baxter noted in his dissenting
>opinion on this point:  "[t]he anti-SLAPP statute is a
>powerful tool to be broadly construed to promote '?the open
>expression of ideas, opinions and the disclosure of
>information.' (Citation omitted.)  It is not, however,
>generally available to the parties in any civil action, but is
>instead expressly limited to lawsuits 'brought primarily to
>chill the valid exercise of the constitutional rights of
>freedom of speech and petition for the redress of grievances'
>'in connection with a public issue' (Citations omitted.)  <u>The
>majority's holding in this case belies that carefully
>delineated legislative purpose and will authorize use of the</u>

extraordinary anti-SLAPP remedy in a great number of cases to which it was never intended to apply.  " (Emphasis added.)

More recently, relying on Briggs and the Legislature's express command that the anti-SLAPP law "shall be construed broadly," (Section 425.16, subd. (a).), the Supreme Court in Navellier v. Sletten (2002) 29 Cal.4th 82, held that the plaintiff's breach of contract claim was subject to a SLAPP motion. Justice Brown, dissenting (with Justices Baxter and Chin concurring), wrote:  "?the majority appears willing to consider any suit a SLAPP, based largely on when it was filed?. The cure has become the disease-SLAPP motions are now just the latest form of litigation abuse.  " (Id., at p. 96. Emphasis added.)

While this Committee might someday wish to engage in a lengthier debate on whether the anti-SLAPP law has become a rotting tree or a tree with a few rotten branches, or is just fine as is, before us for consideration in SB 515 is a measure that seeks to trim off a few bad branches as argued and

SB 515 (Kuehl)
Page 8

identified by the CAOC.

3.  SB 515's exemptions would overturn DuPont Merck case

Proponents assert that SB 515's exemptions are necessary following an appellate court's expansion of the law to allow a SLAPP motion in a class action lawsuit  alleging that the defendant's public false statements and conduct before a regulatory agency and to the general public violated California's Consumer Legal Remedies Act and Unfair Business Practices Act.  (DuPont Merck Pharmaceutical Co. v. Superior Court (2000) 78 Cal. App. 4th 562.)

In ruling that the anti-SLAPP statute applied, the court stated that the allegations relating to the defendant's FDA activities were lobbying activities and fell squarely within the "petitioning" prong of the statute.  Additionally, the court held the false  advertising related allegation involved free speech rights and also constituted a matter of public concern because the complaint itself admitted that the advertising involved 1.8 million users of the drug and involved very serious conditions.  (Since DuPont, the California Supreme Court in Kasky v. Nike (2002) 27 Cal.4th 939, after noting that commercial speech is subject to limited first amendment protection, said:
"statements may properly be categorized as commercial 'notwithstanding the fact that they contain discussions of important public issues,' and that 'advertising which link a

product to a current public debate is not thereby entitled to
the constitutional protection afforded non-commercial speech,
?.'" (Id., at p. 957.)

Proponents argue that the Merck decision is a very dangerous
precedent for eroding the ability of citizens to bring private
lawsuits to correct public or private wrongs.  SB 515 seeks to
"correct" DuPont  by enacting the proposed exemptions to the
anti-SLAPP law.

4.  SB 515 would make SLAPP motion inapplicable to cases against a
    business where cause of action arises from the business's
    commercial speech or activity

This bill would effectively overturn the DuPont case by making

SB 515 (Kuehl)
Page 9

Section 425.16 inapplicable to any cause of action brought
against a person primarily engaged in the business of selling
or leasing goods or services, including, but not limited to,
insurance, securities, or financial instruments, arising from
any statement or conduct of that person when both the
following conditions are met:
 a) the statement or conduct consists of representations of
   fact about that person's or a business competitor's business
   operations, goods, or services, that is made for the purpose
   of obtaining approval for, promoting, or securing sales or
   leases of, or commercial transactions in, the person's goods
   or services, or the statement or conduct was made in the
   course of delivering the good's or services; and,
 b) either i) is aimed at an actual or potential buyer, or
   person likely to repeat the statement to, or otherwise
   influence the buyer, or ii) arose out of or within the
   context of a regulatory approval process, proceeding or
   investigation, even if that statement or conduct concerns an
   important public issue.

CAOC argues that this restriction is necessary in light of the
abuses of the statute by corporate defendants who are
routinely bringing SLAPP motions in ordinary personal injury
and products liability cases to increase the time and expense
for plaintiff's attorneys to handle these cases.  As an
example, CAOC points to Nutter v. Metabolife, (Superior Court
of San Diego County), in which the plaintiff had to argue
against SLAPP motions filed against the plaintiff's cause of
action for strict liability, breach of implied warranty,
negligence, and fraud.  (However, a fifth motion against an
Unfair Competition claim was granted and was appealed.)

CAOC writes that this formulation is consistent with the

recommendation of the Senate Judiciary Committee analysis last year on SB 1651 which urged the sponsors to look at the content and context of the statement or conduct when crafting an exemption, rather than enacting a wholesale exclusion of a class of defendants which had been proposed in SB 1651.

Under this approach, lobbying activities to gain regulatory authority to market a product, or speech intended to persuade an audience to buy one product instead of another, can be viewed in the context of its offering, just as a speech by a

SB 515 (Kuehl)
Page 10

person against the building of a waste facility in the neighborhood.  The latter can clearly be seen to have been made in the context of exercising the person's constitutional right of speech and petition of government and is fully protected speech, while the content and context of the former activities are clearly more in furtherance of business considerations and may be characterized as commercial speech which does not enjoy full constitutional first amendment protection.  SB 515 indeed borrows from the Kasky v. Nike formulation of commercial speech in the provision stating that a statement or conduct consisting of representations of fact about the person's business or its operations that arose out of or within the context of a regulatory approval process, proceeding or investigation, is deemed commercial speech and activity, and outside the protections of the anti-SLAPP law, even if that conduct or statement concerns an important public issue.  (Kasky v. Nike, supra.)

CAOC argues that this latter exemption is particularly important in light of the fact that false and misleading statements are often made by companies seeking approval of their products in the regulatory process.  Subjecting these statements to the SLAPP process would, in CAOC words, engulf every product defect in a morass of satellite SLAPP litigation, adding years and potentially tens of thousands of dollars to the cost.

a)    Opposition to commercial speech exemption

   CJAC argues that "SB 515 attempts to enact a wholesale denial of the ability of an entire class of defendants to protect themselves against a harassing lawsuit intended to attack those defendants' constitutional rights of freedom of speech and petition for redress of grievances?. Nothing can justify the total denial of the Anti-SLAPP suit protections to every statement by every entity regarding its products, services, or business operations."

>       CJAC contends that SB 515's carte blanche denial of the
>       ability to protect one's free speech rights against
>       intentionally chilling litigation is an affront to the
>       courts and to the spirit of Section 425.16.

SB 515 (Kuehl)
Page 11

>       The California Healthcare Institute (CHI) asserts that "the
>       essence of SB 515 is a wholesale denial of a special
>       procedural tool developed by the Legislature in the early
>       1990's to provide early, pre-discovery dismissals of
>       lawsuits premised on the defendant's exercise of some form
>       of protected speech - even commercial speech.  CHI asserts
>       that SB 515 is extremely unfair in its denial of the
>       anti-SLAPP protections to businesses for their commercial
>       speech and argues that the measure "would likely fail a
>       constitutional challenge."
>
>       Opponents also point out that when Kasky was recently
>       argued before the United States Supreme Court, several
>       justices questioned the ease with which a bright line can
>       be drawn, so that protected speech is not chilled, under
>       the California Supreme Court's conclusion that Nike's
>       speech was commercial speech even when that speech touched
>       upon issues that was part of a public debate or was
>       intermingled with noncommercial speech.
>       CAOC responds that this measure is a more measured approach
>       than that considered by this Committee last year in SB
>       1651.  That bill proposed a wholesale exclusion of
>       defendants who were product sellers from the anti-SLAPP
>       law.  The failure of that proposal to distinguish between
>       conduct that may well fall within the paradigm of a SLAPP,
>       as opposed to simple commercial speech intended to further
>       the speaker's business interest, was also troubling.
>
>       Thus, the proposal was recrafted to take a different tack
>       and instead looks at the conduct and context of the
>       statement in order to determine if the underlying statement
>       should be protected by the anti-SLAPP law.  This new
>       approach also avoids the problem of over-inclusiveness when
>       all speech and conduct by a class is excluded from
>       protection, regardless of its content or context.  CAOC
>       contends that SB 515 would withstand a constitutional
>       challenge.
>
>    b)   Constitutional considerations
>
>       As proposed Section 425.17(c ) would exempt lawsuits based
>       on defendant's acts that would be categorized as commercial
>       speech, the proposed exception to the anti-SLAPP law would

```
SB 515 (Kuehl)
Page 12
```

> not be unconstitutional.  The provision does not prohibit
> the commercial speech, and the bill does not punish it with
> penal sanctions or the like.  Nor does the bill regulate or
> impinge that commercial speech.  However, the bill would
> provide that the anti-SLAPP special protections, intended
> to weed out frivolous lawsuits that chill the valid
> exercise of first amendment rights of speech or
> participation in matters of public significance, are not
> applicable to the specified type of commercial speech.  As
> stated in Virginia Pharmacy Board v. Virginia Consumer
> Council (1975) 425 U.S. 748, at 772, fn. 24, commercial
> speech is "less likely to be chilled by proper regulation."
>  Moreover, commercial speech to be protected by the First
> Amendment must concern lawful activity and not be
> misleading.  (Central Hudson Gas & Elec. V. Public Service
> Comm. (1980) 447 U.S. 557.)  Thus, it is within the full
> power of the Legislature to punish false speech, to
> distinguish commercial speech from non-commercial speech,
> and provide less protection, or even no protection, for
> false or commercial speech in the procedural protections of
> the anti-SLAPP statute.
>
> Even if the United States Supreme Court were to toss out
> Kasky's broad definition of commercial speech, that event
> would not be necessarily fatal to SB 515.  At its core, the
> anti-SLAPP law is a procedural device crafted by the
> Legislature to weed out certain frivolous lawsuits arising
> out of the defendant's valid (and thus protected) first
> amendment conduct.  The classifications enacted by the
> Legislature, such as an existing exemption for actions
> brought by public prosecutors, may be justified when
> supported by a rational basis.  (See People v. Health
> Laboratories (2001) 87 Cal.App.4th 442, 448,449, which
> upheld public prosecutor exemption against equal protection
> attack: "  Section 425.16 is tangentially related to the
> constitutional right of free speech, insofar as it was
> enacted to prevent unscrupulous plaintiffs from filing
> meritless lawsuits in order to stymie a person's exercise
> of free speech or petition for redress of grievances  ?.
> Rather, section 425.16 is merely "a procedural screening
> mechanism for determining whether a plaintiff can
> demonstrate sufficient facts to establish a prima facie
> case to permit the matter to go to a trier of fact."

```
SB 515 (Kuehl)
Page 13
```

> (Citations.) Emphasis added.)
>
> In People v. Health Laboratories, a rational basis was all that was necessary to sustain the exemption for actions brought by public prosecutors. Even if the statute is determined to be a content-based regulation of commercial speech, the courts would apply an intermediate scrutiny test and upheld the statute if there is a reasonable fit between the government's purpose and the means chosen to achieve it. (Central Hudson, supra.)

5. <u>Making the anti-SLAPP motion inapplicable to certain class actions and public interest lawsuits</u>

> SB 515 would make the SLAPP motion inapplicable to public interest and class action lawsuits "brought solely in the public interest or on behalf of the general public" when three specified conditions are met. In general, the qualifying language would clearly encompass claims brought under the Unfair Competition Law (Business and Professions Code Section 17200 et. seq.), the Unfair Practices Act (Business and Professions Code Section 17500 et. seq.), the Consumer Legal Remedies Act (Civil Code Section 1750 et. seq.), as well as any other public interest or class actions lawsuits where the three specified conditions are met.
>
> The three conditions have been carefully crafted so that not all public interest or class actions would be automatically exempt from the anti-SLAPP law. This is necessary, according to CAOC, because there are some abusive uses of the unfair competition law that should be subject to the SLAPP motion. CAOC asserts that cases that are motivated by personal gain, such as the recent Trevor Law Group unfair competition actions, would not be covered by the exemption.
>
> In specific support of this exemption, the California Anti-SLAPP Project writes: "The reason this exemption is needed and appropriate is as follows: 'There are certain statutes that protect public health or consumers that allow for enforcement by private attorneys general, without an injured plaintiff. Conceptually, these are virtually identical to when the D.A. or Attorney General enforces those same statutes. (Citations omitted.) Since the statute already

```
SB 515 (Kuehl)
Page 14
```

exempts actions filed by public prosecutors, it should provide a parallel protection when people are acting only in the public interest as private attorneys general, and are not seeking any special relief for themselves."
Opponents assert that there is no reason to grant what is effectively a presumption of validity to cases purportedly brought on behalf of the general public or in the public interest.  While the public prosecutor exemption has been justified on the grounds that public prosecutors may be rationally presumed by the Legislature to act in the public interest, opponents contend that such a presumption or rationale cannot be applied to private litigants who have shown much more regard to the collection of outlandish attorneys' fees awards than a decent recovery for the class of plaintiffs purportedly represented by the attorney.  Opponents point out that it has not been uncommon for plaintiffs attorneys in these cases to collect millions in attorneys fees while the plaintiff class gets a minor rebate or a coupon towards the purchase of the next product.

6.  Exemption from exemption for media and motion picture defendants

Proposed subdivision (d) of newly added Section 425.17 would exempt the news media and other media defendants (such as the motion picture industry) from the bill when the underlying act relates to news gathering and reporting to the public with respect to the news media or to activities involving the creation or dissemination of any works of a motion picture or television studio.  For claims arising from these activities, the current SLAPP motion would remain available to these defendants.

CAOC argues that the reason for these exemptions is simple.  "Newspapers and other media are in the business of disseminating information to the public."

Opponents object to this selective exclusion from SB 515 and argue that it is not justified.

7.  Right to immediate appeal and automatic stay provisions of existing law would not apply if trial court denies SLAPP motion because of SB 515 exemption

SB 515 (Kuehl)
Page 15

On page 3, lines 31 to 34, SB 515 provides: "If any trial court denies a special motion to strike on the ground that the

cause of action is exempt pursuant to this section, the stay and appeal provisions of subdivisions (g) and (j) of Section 425.16 do not apply."

As to nullifying the right to an immediate appeal in these cases, CAOC asserts that current law is being used by defendants to unreasonably delay a case from being heard on the merits, thus adding litigation costs and making it more cumbersome for plaintiffs to pursue legitimate claims. As noted earlier, the Consumer Justice Center argued that a simple pro bono public interest case that should be completed in six months with $5,000 in expenses becomes a costly and financially risky ordeal when the anti-SLAPP law is misused. The filing of the meritless SLAPP motion by the defendant, even if denied by the court, is instantly appealable, which allows the defendant to continue its unlawful practice for up to two years, the time of appeal.

SB 515 would make the right to an immediate appeal inapplicable to SLAPP motions that are denied by the trial court based upon one of the new grounds.

SB 515 would also make the provisions of subdivision (g) of Section 425.16, relating to a stay of discovery upon the filing of a SLAPP motion, inapplicable to SLAPP motions that are denied by the trial upon one of the new grounds.

How this proposed provision is supposed to work is not clear. The confusion arises because existing subdivision (g) dictates an action when the SLAPP motion is filed and does not address the circumstance when a motion is denied. In contrast, CCP Section 916 provides for that the perfecting of an appeal stays the proceedings in the trial court.

In SB 1651, CAOC had asserted that Section 916's mandatory stay of proceedings is severely damaging to a plaintiff's case, and that the mandatory stay creates an incentive for a defendant to file a meritless special motion and then appeal a denial, because that process ensures a delay of at least two years in the court's hearing of the claim. In the meantime,

SB 515 (Kuehl)
Page 16

costs are incurred, discovery is stalled and critical evidence can be lost or destroyed.  Moreover, the inability to conduct discovery pending the appeal may prejudice the plaintiff in his or her argument on appeal.  Even if the plaintiff prevails on appeal, and the motion is denied, the passage of time may have irreparably damaged the plaintiff's case.

SHOULD THIS PROVISION BE CLARIFIED?  SHOULD, INSTEAD, THE

>    PROVISIONS OF SECTION 916, PROVIDING FOR AUTOMATIC STAY UPON A
>    PERFECTED APPEAL, BE REFERENCED?
>
>    8.  Other opposition arguments
>
>    Novartis Pharmaceuticals Corporation argues that SB 515 would
>    significantly the protections against frivolous litigation
>    which are now provided by the anti-SLAPP statute.  It asserts
>    that it was able to obtain a quick dismissal in a purported
>    class action lawsuit that attacked Novartis' actions in taking
>    positions on scientific issues.  Without the special motion,
>    Novartis writes that it would have had to spend years and
>    hundreds of thousands of dollars or more in attorneys fees to
>    defend the action.
>
>    The building industry coalition also opposes SB 515, concerned
>    that it would grant absolute protection to and encourage
>    unmeritorious NIMBY (Not in My Back Yard) litigation by
>    granting opponents of new development projects immunity from
>    the SLAPP motion.  They note that such litigation often takes
>    the form of a CEQA (California Environmental Quality Act)
>    challenge.  These opponents argue that California cannot
>    afford more NIMBY lawsuits.
>
>    The California Dental Association (CDA) also opposes, noting
>    that the SB 515 would eliminate the only legal tool the CDA
>    has been able to employ to avoid fully litigating Unfair
>    Competition nuisance lawsuits filed against them for their
>    public statements about dental filling materials.
>
>    The Association of California Insurance Companies writes that
>    "SB 515 is a transparent and unwarranted attempt to eviscerate
>    the anti-SLAPP procedure by expanding the exceptions so
>    broadly that the exceptions will inevitably swallow the rule."

      SB 515 (Kuehl)
      Page 17




       Support: California Anti-SLAPP Project

      Opposition: California Dental Ass'n,; Civil Justice Association
              of California; California Healthcare Institute;
              California Association of Realtors; California
              Building Industry Ass'n.; California Business
              Properties Ass'n.; California Chamber of Commerce;
              Consulting Engineers and Land Surveyors of California;
              Home Ownership Advancement Foundation; Novartis;
              Association of California Insurance Companies

                                    HISTORY

     Source: Consumer Attorneys of California

     Related Pending Legislation: None Known

     Prior Legislation:SB 789/SB 1651 (Kuehl) - Vetoed, 2002
                    AB 1675 (Asm. Judiciary Committee), Ch. 960,
              Stats. of 1999
                    SB 1296 (Lockyer), Ch. 271, Stats. of 1997
                    SB 1264 (Lockyer), Ch. 726, Stats. of 1992

                              **************